ST. VINCENT'S CHURCH, MADISON, A CORPORATION, RESPONDENT, v. BOROUGH OF MADISON, SAMUEL G. WILLETS, CLERK, AND F. IRVING MORROW, COLLECTOR OF TAXES, APPELLANTS.

Submitted July 6, 1914—Decided November 16, 1914.

1. It is not the date of the teste, but the time of the allowance of a writ of *certiorari* which is limited by section 92 of the Borough act. As it appears that the application for the writ in this case was made within the time prescribed, and as it does not appear that it was allowed out of time, the objection that its

issuance was barred by the statute fails. But, even if the allowance were made out of time, the objection would be invalid if the application were made within time, because a justice of the supreme court has a constitutional right to deliberately consider all applications made to him and take the same under advisement, and it is not within the power of the legislature to limit this right so as to defeat the ends of justice, nor is there discoverable in the section mentioned any such legislative intention.

2. If delay in entering a judgment or order is caused by the action of the court, an entry will be allowed *nunc pro tunc* as of the time when the party would otherwise have been entitled to it, as it is a rule of practice, as well as of common justice, that the action of the court shall not be permitted to work an injury to a party.

3. Whether or not the borough clerk and collector are, in this case, improper parties, they are not entitled to have the *certiorari* quashed as to them, because, the writ having been directed to them in conjunction with the council of the borough, they, with the mayor and councilors signed the return. If they had no control of the record they should not have assumed to certify that they returned that record to the supreme court. Their present contention is inconsistent with their former action. and they will not be heard to say that they are not proper parties. when they have already acted as such.

4. The lands of respondent being within the sewerage area or district of the borough, at least indirectly, will find an outlet for sewage through the general system, and, therefore, are liable to an assessment for benefits under the act of February 19th, 1895.

On appeal from the Supreme Court, whose opinion is reported in 85 *N. J. L.* 131.

For the appellants, *Charles A. Rathbun.*

For the respondent, *King & Vogt.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was a case on *certiorari* in which the Supreme Court set aside a sewerage assessment.

The defendants-appellants urge that the writ should have been dismissed because it was not issued within the time allowed by section 92 of the Borough act (*Pamph. L.* 1897, *p.* 328), which provides that no *certiorari* shall be allowed or granted to set aside any assessment made for any sewer after

thirty days shall have elapsed from the date of the confirmation of such assessment by the council.

The report of the commissioners of assessment was confirmed at a meeting of the borough council held November 25th, 1912. The thirty days' limitation expired December 25th, 1912. It does not appear that the writ of *certiorari* was allowed after that date. The record discloses a notice by the prosecutor to the defendants of an application to Mr. Justice Minturn on December 21st, 1912, for an allowance of the writ, and, endorsed upon it, appears an *allocatur* signed by that justice without date. It is true that the writ is tested in the name of the Chief Justice of the date of December 28th, 1912. It is sealed with the seal of the Supreme Court instead of with a wafer which might have been affixed by the attorneys as agents of the clerk. The delay in getting the writ to Trenton doubtless caused the teste on a day subsequent to the expiration of the thirty days' time limit. It is not the day of the teste, but the time of the allowance of the writ which is limited by the statute. As it appears that application was made within the time prescribed by law, and as it does not appear that the writ was allowed out of time, this objection of the defendants-appellants must fall.

But, even if the allowance were made out of time, the objection would be invalid if the application were made within time, and for this reason: A justice of the Supreme Court has the constitutional right to deliberately consider all applications made to him, and it is not within the power of the legislature to limit this constitutional right so as to defeat the ends of justice, nor is there discoverable in the section mentioned any such legislative intention. If an application were made to a justice of the Supreme Court for the allowance of a *certiorari* on the last day on which it could be allowed, and, if the application presented a question of doubt and difficulty which it was necessary for the justice to take under advisement, and if, for that reason alone, or by reason of his other judicial engagements, it was impossible for him to decide for or against the allowance until a day later than

the time limited for the allowance of the writ, still it could be lawfully allowed and issued.

In *McNamara* v. *New York, Lake Erie and Western Railroad Co.*, 56 *N. J. L.* 56, it was held that whenever delay in entering a judgment is caused by the action of the court, judgment *nunc pro tunc* will be allowed as of the time when the party would otherwise have been entitled to it. And this doctrine is not to be held to include final judgments alone. The rule of practice is elastic enough to include any interlocutory order, as would appear from the broad language of Mr. Justice Dayton in *Den* v. *Tomlin*, 18 *N. J. L.* 14, where he said that it is a rule of practice, as well as of common justice, that the action of the court shall not be permitted to work an injury to a party.

It is also argued that the Supreme Court should have quashed the writ because of non-joinder and misjoinder of parties. One objection is that "the Council of the Borough of Madison" is named as a respondent, when, in fact, the corporate name of the municipality is "Borough of Madison." The Supreme Court does not treat this question in its opinion, but when the case was before that tribunal the appellant made a motion for dismissal for the reason just stated, which motion was denied, and the respondent then moved to amend its name from "the Council of the Borough of Madison" to "Borough of Madison," which motion was allowed, and an appropriate order was thereupon entered. That properly disposed of the question.

It is further objected that the writ is directed to the clerk and also to the collector of the borough as well as to the borough itself, and *Kirkpatrick* v. *Commissioners*, 42 *N. J. L.* 510, is relied upon for quashing of the writ, as against them. While that case holds that if a *certiorari* be directed to a proper and also to an improper party, it may be quashed as to the latter, it was distinctly held by Mr. Justice Dixon, speaking for the Supreme Court (at *p.* 512), that there is no reason why a misdirection (misjoinder) should impair the writ as to the proper party. Whether or not the clerk or col-

lector are proper parties in this case, certainly the borough of Madison is a proper party, for, by section 58 of the Borough act (*Pamph. L.* 1897, *p.* 321), the commissioners of assessment are required to certify their assessments to the council by a report, in writing, which report may be considered by council, and, after considering the same, they may adopt and confirm it with or without alterations, and when the report shall have been so adopted and confirmed, the same shall be final and conclusive; and by section 61, that after the report shall have been adopted and confirmed, it shall be recorded at full length in the records of the proceedings of the council, and shall then be delivered to the collector for action. It would be idle to say that the council, even after having delivered the report to the collector, could not make a return concerning it from its own records. Whether or not the clerk and collector are in this case improper parties, we think there should have been no quashing of the writ, as to them, because the writ, having been directed to them in conjunction with the council of the borough, they with the mayor and councilors signed the return, in which they certified that they sent to the justices of the Supreme Court the assessment against the prosecutor, together with all things touching and concerning the same, as fully and entirely as before them they remained, including copies of so much of the minutes of the council of the borough of Madison as related to and had any bearing upon the same. If they had no control of the record they should not have assumed to certify that they returned that record to the Supreme Court. Their present contention is inconsistent with their former action, and they will not be heard to say that they are not proper parties when they have already acted as such.

The gravamen of respondent's contention is that it is not assessable at all for benefits conferred upon that part of its premises being the rear portion of the tract on which its church and rectory are situate. The portion fronting on Green Village road, containing the church and rectory, was assessed in the sum of $218.90, which was paid. The whole tract extends back to the lands of the Presbyterian church

for a distance of nearly six hundred feet, and is bounded on the west by a one-foot strip of land owned by Alice L. Green, and on the east by lands of Charles A. Rathbun and others.

The case shows that the commissioners in making their assessment treated all corner properties as having a depth of one hundred feet, and that, in making the assessment of the church and rectory tract, they made an assessment against the Green Village road frontage, considering it as a lot one hundred feet deep. The remaining part they designated as being the Wilmer street portion, although it does not impinge on that street, there being a strip extending from Green Village road southerly along the whole depth of respondent's property, one foot wide, being Miss Green's strip above mentioned. On this rear portion of the respondent's property the sexton's house and parochial school are located. The sexton's house is sewered by pipes running through the land of the Madison public school, and it was planned to connect the parochial school with the same pipe line. The school was in course of erection when this case was instituted, and has since been finished, and the plan for sewering it through the public school property has been carried out. There was assessed against this portion of respondent's property the sum of $264; and it is to this assessment that objection is made.

It is submitted by respondent that the commissioners, having assessed the land of Miss Green along Wilmer street, cannot assess its land for sewer benefits on that street as there is no access to it; that the assessments are laid on the basis of street frontage and the result of the assessment is to compel payment by respondent of a larger proportion of cost than is borne by any other landowner; that inasmuch as the parochial school (since finished) was in course of construction, the assessment was not authorized; and, furthermore, that as access cannot be had to Wilmer street from the respondent's lands, to support the assessment there must be some present appreciable benefit, which, it is claimed, there is not.

The Supreme Court sustained the respondent's contention upon the ground that to warrant an assessment for the construction of a sewer, the property assessed must be capable of a present appreciable benefit by direct connection with the sewer.

This view ignores the provisions of the act of February 19th, 1895 (*Pamph. L., p. 95; Comp. Stat., p.* 3580, § 458), which, in section 1, provides that where in any municipality sewers or drains have been or may be constructed, forming part of a general system of sewerage or drainage, or part or parts thereof, it shall and may be lawful in assessing the benefits conferred by the construction of any main, trunk or intercepting sewer or drain, forming a part of system, to assess such benefits not only upon the lands and real estate fronting or abutting on the line thereof, but also upon all the lands and real estate situate in and throughout the entire sewerage or drainage area of such municipality, and through which sewers and drains the whole or a part of the sewerage or drainage of such area or district, directly or indirectly, finds or will find an outlet; and, in section 4, that in all cases of sewer or drain assessments made for benefits conferred by the construction of any lateral or connecting sewer or drain, forming a part of the general system, and upon the lands and real estate fronting or abutting on or in the vicinity of the line of such lateral or connecting sewer or drain, no assessment has been made for benefits conferred or likely to be conferred by the construction of any main, trunk or intercepting sewer or drain, and through which such lateral or connecting sewer or drain is or will have an outlet for its sewerage or drainage, it shall and may be lawful to include in such assessment not only the costs or part of the costs of such lateral or connecting sewer or drain, but so much of the cost of the main, trunk or intercepting sewer or sewers, drain or drains, with which the same is connected and through which it finds an outlet, as the said lands and real estate shall be peculiarly benefited by the construction of the main, trunk or intercepting sewers or drains, or any part thereof.

It will be seen, therefore, that the improvement in question falls directly within the provisions of the act of 1895.

A general system of sewerage for the borough having been constructed, the commissioners of assessment were directed to make a just and equitable assessment of damages sustained by, or benefits conferred upon, lands and real estate by reason of such improvement, according to the statutes in such case made and provided.

The report of the commissioners certifies that they met and heard all persons who appeared before them in reference to the awarding of damages, or the assessment of benefits, for the construction of the sewerage system and the laying of laterals in the borough, and that they made a just and equitable assessment of the damages sustained by the respective owners of land affected, and the benefits conferred upon any lands or real estate, by reason of the improvement; and that they assessed upon the parcels of land and premises shown on the several maps or plans accompanying their report, the sums mentioned, &c., as to St. Vincent's Church, $264. This, as appears from the report, was an assessment for sewers and not for laterals. And the commissioners further certified that the sums assessed, in their opinion, did not exceed the benefits conferred, and that no damages were sustained by any of the lands or real estate by reason of the improvement.

The reason for not connecting the sexton's house and parochial school with the sewer on Green Village road is, that the front of the lot on that road is higher than the rear of the lot upon which those buildings are located, and the declivity is too great to permit of the flow, by gravity, of sewage from the latter to the Green Village road.

We are of opinion that in making the assessment for benefits the rear lands of the respondent should be included, because they are within the sewerage area or district of the borough, which, at least, indirectly, will find an outlet for sewage through the general system, as contemplated by the act of 1895. That these lands should be visited with an assessment for this improvement is plain; and it does not appear

that the assessment complained of was made in accordance with the provisions of the act mentioned.

The result reached is, that the Supreme Court erred in setting aside the assessment *in toto,* and its judgment will, therefore, be reversed and the cause remanded, to the end that a proper assessment may be made in that court under the authority of the act of March 28th, 1881 (*Pamph. L., p.* 194; *Comp. Stat., p.* 5171, § 191), and in accordance with the provisions of the act of February 19th, 1895, *supra.* See *Elizabeth* v. *Meeker,* 45 *N. J. L.* 157; *Brown* v. *Town of Union,* 65 *Id.* 601.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Trenchard, Parker, Minturn, Kalisch, Black, Bogert, Vredenburgh, Heppenheimer, Williams, JJ. 12.