JOSEPH P. TESTA, ESQUIRE, BY POWER OF ATTORNEY FOR JOSEPH BONACCORSI AND ANDREA BONACCORSI, HIS WIFE, PLAINTIFF-RESPONDENT, v. DONALD ZIMMERMAN, DEFENDANT, AND DAVID KEMENASH AND KATHLEEN KEMENASH, HIS WIFE, INTERVENORS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted June 10, 1987—Decided July 8, 1987.

Before Judges DREIER and SHEBELL.

*Lipman, Antonelli, Batt & Dunlap,* for appellants (*Peter M. Kober,* on the brief).

*Basile, Testa & Testa,* for respondent (*Jeffrey N. Cohen,* on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Intervenors, David Kemenash and Kathleen Kemenash, appeal the December 8, 1986 order amending the judgment entered against the defendant, Donald Zimmerman, to the extent that the order enters the judgment *nunc pro tunc* from its originally docketed judgment date of August 22, 1986 to April 24, 1986.

On December 11, 1981 Zimmerman and David Kemenash jointly purchased from Joseph Bonaccorsi and Andrea Bonaccorsi certain real estate located in Vineland. At the time of closing Zimmerman advised the Bonaccorsis that he did not have sufficient funds for his share of the purchase price. He therefore executed an unsecured promissory note to the Bonaccorsis in the amount of $6,529 as part of the purchase price. The Bonaccorsis were unable to take a second mortgage from Zimmerman to secure the promissory note because the Citizens United Bank, N.A. ("Citizens") which was providing the funds for the first mortgage in the sum of $85,000 would not permit any secondary financing. The Bonaccorsis granted a power of attorney to Joseph P. Testa, Esquire and moved to Italy. Zimmerman subsequently defaulted on both the first mortgage and the unsecured note to the Bonaccorsis.

Citizens, now New Jersey National Bank, demanded full payment of the balance due on the note and mortgage in the amount of $91,671.80 from the Kemenashes. The Kemenashes paid that sum in accordance with an agreement dated September 26, 1985 under which the New Jersey National Bank assigned to them its rights and interests under the note and

mortgage. The Kemenashes then instituted a foreclosure action against Zimmerman on October 4, 1985, in which Zimmerman was represented by counsel and filed an answer. That litigation was resolved on August 8, 1986 by Zimmerman transferring his interest in the Vineland real estate to the Kemenashes by a warranty deed which was recorded in the Cumberland County Clerk's Office on August 14, 1986. Prior to accepting the settlement and deed the Kemenashes obtained a title search which showed the property to be free and clear of all liens, except for a judgment to a plumbing supply company and certain attorneys' fees owed by Zimmerman. An additional payment of $815.38 was made by the Kemenashes to satisfy the judgment, the attorneys' fees owed by Zimmerman and as consideration for Zimmerman's execution of the deed in lieu of foreclosure.

Testa instituted suit against Zimmerman on August 16, 1985 for the moneys due on the unsecured note. Zimmerman did not file an answer to Testa's action. Testa asserts that on October 29, 1985 he mailed a Request to Enter Default to the Superior Court but that he did not receive the return of a filed copy. Testa then wrote to the Superior Court on February 13, 1986 and received no response. He wrote again on April 23, 1986 and, having received no response to that letter, on June 20, 1986 he telephoned the Office of the Clerk of the Superior Court and was told that there was no record of their having received the Request to Enter Default. By this time the six month period after default provided for in *R.* 4:43–1 had run and default could no longer be entered by the Clerk of the Court. Plaintiff therefore filed a motion for entry of default which resulted in the execution of an order on July 18, 1986 allowing entry of default out of time.

Testa maintains that the day before receiving the order allowing default out of time he received a filed copy of his Request to Enter Default dated October 29, 1985 with a mark showing that it was filed by the Clerk of the Superior Court on April 24, 1986. Testa executed an affidavit of proof and of

non-military service, dated July 22, 1986 and filed August 21, 1986, in order to obtain a final judgment by default. Judgment was entered by the Clerk of the Superior Court on August 22, 1986 in the sum of $6,996.45 together with costs. A writ of execution was issued on August 28, 1986. Inasmuch as Zimmerman's interest in the property had been conveyed prior to the entry of judgment, plaintiff moved for the order now appealed from so that his judgment lien would have priority over the transfer and constitute a lien upon the property. The Kemenashes intervened and were heard through counsel prior to the granting of the order under review.

The motion judge in granting relief stated:

... justice requires that the innocent party, Bonaccorsi through his attorney in fact Testa should not suffer the failure on the part of the clerk of the Superior Court to run an efficient office. It took from February till July to get back something that was forwarded to the clerk of the Superior Court for filing in essence. And but for all those failures, clearly Bonaccorsi, the innocent party, totally innocent party, would not have been without a lien. On the other hand, Keminash [sic] who claims to be an innocent' [sic] party, participated in the sale of the first instance, was a purchaser, knew that there was an outstanding promissory note due Bonaccorsi, knew or should have known and I can conclude that, that if Zimmerman was defaulting on the mortgage debt to the bank, he in probability was also defaulting on the purchase money promissory note to—to Bonaccorsi. And therefore the Court will do that which the parties—the movant attempted to do but for the neglect of the office of the Superior Court. I will grant a judgment nunc pro tunc....

We find no basis for the Law Division to have given the Testa judgment a preference over the rights acquired by the Kemenashes to Zimmerman's interest in the real property. Plaintiff cites St. Vincent's Church v. Borough of Madison, 86 N.J.L. 567, 570 (E. & A. 1914) for the proposition that "... whenever delay in entering a judgment is caused by the action of the court, judgment nunc pro tunc will be allowed as of the time when the party would otherwise have been entitled to it." However, the delay by the court clerk was not in entering judgment but in filing the request for entry of default pursuant to R. 4:43–1.

Only "[w]hen a default has been entered in accordance with R. 4:43–1 [may] a final judgment ... be entered in the action

..." by the clerk or the court upon request of the plaintiff. *R.* 4:43–2(a) & (b). *See also* 2 N.J.Practice (Del Deo, Court Rules Annotated) *R.* 4:43–2 at 550 comment (1973 & Supp.1986). *N.J.S.A.* 2A:16–1 further requires:

> No judgment of the superior court shall affect or bind any real estate, but from the time of the actual entry of such judgment on the minutes or records of the court.

According to our understanding of the record, no request for final judgment by default pursuant to *R.* 4:43–2 was addressed to either the clerk or the court prior to the August 8, 1986 transfer of title from Zimmerman to the Kemenashes. More importantly, the entry of final judgment by default was dated August 22, 1986. Thus, we are unable to accept plaintiff's statement that "default *nunc pro tunc,* as of April 24, 1986, when plaintiff originally filed, would have constituted an immediate lien on the subject property and therefore Kemenash, joint owner, and subsequent purchaser of defendant Zimmerman's half interest, takes the property subject to the lien." The filing of plaintiff's Request to Enter Default does not constitute a judgment in the contemplation of the statute; therefore, the mandate of the statute must be applied.

Plaintiff contends that *R.* 1:1–2 justifies the action taken by the Law Division. This rule provides in part:

> ... any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes.

Plaintiff urges that the rule is applicable because the Kemenashes were present at the closing, knew of Zimmerman's promissory note to the Bonaccorsis, knew that Zimmerman was in default and also knew of the pendency of this action on the note. However, the Kemenashes also had determined that the judgment did not appear of record and they knew that the Bonaccorsis had only a promissory note which was unsecured by any mortgage upon the property. Further, the Kemenashes paid over $91,000 in exchange for an assignment of the bank's first mortgage on the property.

We do not think that it can be said that the interests of justice are any better served by the Kemenashes having the property encumbered by the lien of plaintiff's judgment than by letting the Bonaccorsis remain in the position of unsecured creditors which they freely accepted at the time of closing. The Bonaccorsis are in no worse position now than they would have been if the Kemenashes had done nothing when the bank foreclosed. If that had happened, the bank in enforcing their first mortgage would have acquired the property free of Zimmerman's interest.

■ Plaintiff's reliance upon *R.* 1:13–1 is not justified as we are not dealing with a clerical mistake in a judgment, order or other part of the record. Rather, plaintiff failed to obtain a final judgment by default on the unsecured note prior to the Kemenashes' acceptance of the deed of Zimmerman's interest. We do not consider whether the Bonaccorsis have any other action available to them under *N.J.S.A.* 25:2–1 *et seq.*

The order appealed from dated December 8, 1986 is hereby reversed. The Law Division is hereby directed to cause the judgment docket to be corrected to reflect the original date of entry of judgment of August 22, 1986 rather than April 24, 1986.

TOWN OF PHILLIPSBURG v. BLOCK 22 LOTS 14, 15, 16 AS-SESSED TO LAREENE STEWART AND OTHER LANDS.

Superior Court of New Jersey
Chancery Division Warren County

Decided February 26, 1987.